GLOECKNER, Appellant, v. KITTLAUS et al.

Division One, December 21, 1905.

1. **EQUITY: Performance of Contract.** Where plaintiff and defendant entered into a contract for the purchase of land, if plaintiff has not performed his part, a court of equity will not compel defendant to perform his part.

2. ———: **Contract: For Contingencies Which Never Arose.** It is unnecessary to determine the exact meaning of a contract made to cover contingencies in reference to a transaction which never arose.

3. ———: ———: **In Writing: No Consideration.** A written contract concerning the interests the parties thereto were to take in land to be sold at a partition sale, if supported by no consideration, and the lands were not purchased in pursuance thereto, is not valid.

4. ———: **Property Held in Trust: Tender.** Where plaintiff's land was about to be sold to pay his share of the costs in a partition suit, and the land was sold to defendant under an understanding that he should hold it in trust for plaintiff as security for the money he had advanced to buy it, plaintiff cannot have it declared to be so held by defendant unless he tenders along with his bill the money so advanced.

5. ———: ———: **Creating of Relation.** Where land was about to be sold to pay plaintiff's debts, and he and defendant entered into an agreement by which defendant was to furnish the money and plaintiff was to have an interest in the property if it sold for less than $500, and was not to bid for the property if the bidding went over $500 or was bid on by third parties, and it sold for $610, and plaintiff did not bid after the bidding reached $500, and stood by and saw the deed made to defendant without objection, he cannot afterwards maintain a suit in equity for an interest in the property, for there was nothing in the transaction creating a trust relation between him and defendant.

6. ———: **Contract Void for Uncertainty.** A contract in writing, so ambiguous and uncertain in its terms that it is unintelligible, and a court of equity cannot enforce it in accordance with the interpretation plaintiff has placed upon it without ignoring the principles of justice, will be held to be void, and the petition founded thereon to state no cause of action.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney,* Judge.

AFFIRMED.

*Warren D. Isenberg, E. J. O'Brien* and *August Rebenack* for appellant.

(1) The answer admitted every material fact necessary to establish a constructive trust, but set up certain facts by way of avoidance that if true would not change the relationship or status of the parties, nor excuse in law or equity the acts of defendant Kittlaus in violating his duty to his friend. If his conduct is conscionable in equity, we fail to see it. The court should have given judgment on the pleadings. Dezell v. Fidelity Co., 176 Mo. 253; Lang v. Lang, 79 Mo. 644. (2)

Any agreement or contract in writing whereby a person agrees that a particular parcel of land shall be dealt with in a particular manner for the benefit of others raises a trust in favor of such other person, and this trust may be manifested or proven by any writing in which the fiduciary relation between the parties and its terms can be clearly read. McArthur v. Gordin, 12 L. R. A. 667; Bragg v. Paulk, 42 Me. 502; Bair v. Berberich, 77 Mo. 414, 6 Mo. App. 537; Rose v. Bates, 12 Mo. 30; Rutherford v. Williams, 42 Mo. 18; McNew v. Booth, 42 Mo. 189. Where, as in this case, the agreements were made by Kittlaus with the advice of his attorney and Gloeckner was prevailed upon to be without counsel— to conceal from his counsel—especially where the relationship of the parties is one of explicit confidence in the honor and integrity of his friend, the imposition practiced later amounts almost to a conspiracy. Berlien v. Bieler, 96 Mo. 491; Mesker's Appeal, 107 Pa. 612. The rule is that he who bargains in matters of advantage with a person placing confidence in him, is bound to show that a reasonable use has been made of that confidence. This applies to every person. Northcraft v. Martin, 28 Mo. 649; Bedford v. Moore, 54 Mo. 448; Clark v. Bank, 57 Mo. App. 277; Petit v. Carpenter, 86 Mo. App. 452; McClure v. Lewis, 72 Mo. 320; Euneau v. Rieger, 105 Mo. 659; Joplin v. Case, 104 Mo. 573; Martin v. Baker, 135 Mo. 495. In a partition sale the parties agreeing that one of their number shall bid off the property for the benefit of all parties, he is trustee for all the parties. Northcraft v. Martin, 28 Mo. 469. So a petition is not demurrable because a judgment is asked not warranted by the averments. The court will grant any relief consistent with the case made and the allegations of the petition. Northcraft v. Martin, 28 Mo. 469; Hamonds v. Cadwalader, 29 Mo. 169. Equity will relieve from fraudulent acts or omissions. Fraud arising from circumstances of imposition presents the plainest case for relief. Fraud properly includes all

acts, omissions and concealments which involve legal or equitable duty, trust or confidence justly reposed and are injurious to another, or by which an undue and unconscionable advantage is taken of another. Merriman v. Newman, 9 Heisk. (Tenn.) 269; Davis v. Scovern, 130 Mo. 315; Henderson v. Dickey, 50 Mo. 165.    (3) The two writings pleaded by the plaintiff in the petition are but parts of one agreement as a whole and were both executed before the sale took place which was the occasion for entering into the same; and therefore the defendant's objection that the second paper was without consideration cannot be seriously considered because of the admitted consideration of the first paid and because no money consideration was necessary for either. The consideration was united benefits and confidence. The loss of plaintiff's claim on the land was sufficient, which passed by the sale. Leeper v. Taylor, 111 Mo. 324; Lami v. Ewing, 31 Mo. 75; Bispham's Equity (2 Ed), sec. 67.    The rule excluding oral testimony has no application to a distinct collateral contemporaneous agreement, independent of and not varying the written agreement. Liebke v. Methudy, 14 Mo. App. 65; Brown v. Bowen, 90 Mo. 184.

*G. Wm. Senn, W. R. Schery* and *Rassieur, Schnurmacher & Rassieur* for respondents.

(1)    (a)    Where a contract or writing is not ambiguous and the language thereof is used in the usual, general, and not technical, sense, the court will not resort to parol evidence, but the construction of the contract or writing is a matter of law for the court. McClung v. Whitney, 82 Mo. App. 631; Blake v. Jaeger, 81 Mo. App. 242; Koehring v. Muemminghoff, 61 Mo. 403; Tracy v. Iron Works, 104 Mo. 193; Walker v. Engler, 30 Mo. 130; Chrisman v. Hodges, 75 Mo. 415; Halliday v. Lesh, 85 Mo. App. 285, 288.    (b)    And the acts of the parties to a contract or writing, in performance of the same, will

have great, if not controlling, influence in the interpretation of the same. Henning v. Ins. Co., 47 Mo. 431; Depot Co. v. Railroad, 131 Mo. 305. (c) A contract or writing, null or void for uncertainty, creates no cause of action, nor will the court, for the failure of the parties to fully provide as to the subject-matter in all respects, undertake to make any contract between them. Burks v. Stam, 65 Mo. App. 460; Huse v. Heinze, 102 Mo. 249; Mallinckrodt v. Nemnich, 83 Mo. App. 16; Staluth v. Guaranty Co., 81 Mo. App. 632; Keaton v. Boughton, 83 Mo. App. 165; 7 Am. and Eng. Ency. Law (2 Ed.), 116; Bishop on Contracts ('87), secs. 117, 316, 390. (2) Any modification of an existing contract must be supported by a new and independent consideration. Henning v. Ins. Co., 47 Mo. 431; Wilson v. Russler, 91 Mo. App. 281. (3) In order to bring plaintiff, as against defendant Kittlaus, within the principle of constructive trusts or trusts arising out of fraud, it must appear that plaintiff, relying upon defendant, had been by the latter induced not to bid or otherwise to protect his interest; or that in some other respect a consideration had passed from him, or a detriment been suffered by him, in reliance upon the undertaking of defendant to act in his stead and for him; or that defendant Kittlaus had by his acts or declarations deterred plaintiff or others from bidding at the sale. The authorities contained in appellant's brief so decide.

MARSHALL, J.—This is a proceeding in equity to set aside a conveyance of fourteen and fifteen one-hundredths acres of land in St. Louis county, from the defendant Kittlaus to the defendant Wittich; and to declare the defendant Kittlaus a trustee for the plaintiff for an undivided five-sevenths interest in the land; and to charge the two-sevenths interest remaining in Kittlaus with a lien for five-sevenths of $165, received by Kittlaus for the condemnation of one and fifteen one-

192 sup—31

hundredths acres for a railroad right of way, and for a partition and sale of the land, and a division of the proceeds among the parties, in the proportions stated. The trial court rendered a judgment for the defendants, and the plaintiff appealed.

THE ISSUES.

The petition alleges that in April, 1897, the plaintiff became the purchaser of the undivided interest of one Ponath, amounting to 17.382 acres in a larger tract of land in St. Louis county; that a partition suit was then pending against Ponath for the land, and that the plaintiff, on his own motion, was made a party to the suit; that by the decree in partition the plaintiff was awarded seventeen and three hundred and eighty-two one-thousandths acres, and the same was charged with the plaintiff's portion of the costs in partition, amounting to $329.50; that the plaintiff was unable to pay said costs, and that the land was about to be sold to satisfy said costs; that desiring to save the land, the plaintiff induced the defendant Kittlaus to advance or loan him a sum of money sufficient to bid in the land, and in pursuance to that arrangement, entered into a written contract with the defendant on the 15th of April, 1898, which provides as follows:

"First. That at a certain sheriff's sale, to take place on the 18th day of April, 1898, in the county of St. Louis, Missouri, of 17.382 acres, more or less, of land in said county under an execution against one Edward H. Ponath and others, the said Louis Kittlaus will put up and pay, if a joint bid hereinafter mentioned is successful, upon a joint bid by said Louis Gloeckner and said Kittlaus for such property so to be sold, the sum of $500 and no more; and that said Gloeckner will put up and pay the additional sum, if any, upon each joint bid.

"Second. That said Louis Gloeckner shall be the party to make such joint bid, and shall exercise his own

discretion in making and continuing such bid, but said Gloeckner shall make no bid at said sale for or with any person other than the said Kittlaus, or enter into any agreement providing for or effecting the same.

"Third. If the joint bid of said Gloeckner and said Kittlaus at said sale is successful, then the title to said property is to be transferred to them in the following proportions, to-wit, to Louis Gloeckner an undivided five-sevenths interest; to Louis Kittlaus an undivided two-sevenths interest.

"Fourth. Nothing herein contained shall be construed to prevent said Louis Kittlaus from bidding at said sale, on and for his own and sole account, so long as any bidder or bidders other than or besides said Louis Gloeckner shall continue to make or offer any bid or bids."

That thereafter on the 18th of April, 1898, said Kittlaus and plaintiff entered into a further agreement as follows:

"It is hereby agreed that if Louis Kittlaus buys at sheriff's sale 17.382 acres on the 18th day of April, 1898, in the county of St. Louis, State of Missouri, for a sum of money exceeding five hundred dollars, he is to share with Louis Gloeckner as follows: If the land is bought by Louis Kittlaus for a sum between $501 to $700, he agrees to give Louis Gloeckner eight hundred dollars' worth of same property. If land is bought for $701 to $1,000, he agrees to give Louis Gloeckner six hundred dollars' worth of property in land."

The petition then alleges that under the agreement and modification of the agreement, aforesaid, it was agreed and mutually understood that Kittlaus should do all the bidding at said sale on the joint account of Kittlaus and the plaintiff, and that an undivided two-sevenths should be conveyed to Kittlaus as compensation for his advancement of such money, on any successful bid that he might make at said sale up to the sum of $500, and that the remaining five-sevenths

should be conveyed to the plaintiff as representing his interest in the land exclusive of the $500 to be advanced by Kittlaus, and that in the event competitive bids should run over $500, or a minor part or portion of such land should be sold to any other bidder, then in such event said agreements between plaintiff and defendant were understood to preserve plaintiff's title and interest in the land; that at said sale plaintiff and defendant were present; that plaintiff refrained from bidding on the land in pursuance to the said agreement with Kittlaus, and that Kittlaus bid in 15.30 acres of the land for the sum of $450, and was entitled to receive a deed for two-sevenths thereof, and the remaining five-sevenths were to be deeded to the plaintiff; that in violation of the agreements and understandings aforesaid, and with intent to cheat and defraud plaintiff, the defendant caused a deed to the whole of the 15.30 acres to be made to him, and has refused to convey any part thereof to the plaintiff; that on the 22nd of January, 1900, Kittlaus received $165 from the condemnation proceeding of 1.15 acres of the land taken for a railroad right of way; that on the 14th of March, 1902, Kittlaus conveyed the land to the defendant Wittich for a pretended consideration of $1,200, but that said conveyance was actually without consideration, and was made pursuant to a conspiracy between Kittlaus and Wittich to defraud plaintiff, and that Wittich had knowledge of plaintiff's rights in the premises.

The answer is a general denial, except as otherwise admitted in the special pleas. The special pleas admit the setting aside of the land to the plaintiff in the partition suit and the charging thereon of the costs stated, but allege that the interest so set apart to the plaintiff was subject to the interest of Ponath and Brueggemann in the land, and that said partnership estate was insolvent, and that "the demands against the same entirely exhausted said interest and land;" admit the execution of the first agreement of the 15th of April, but aver

that under that agreement Kittlaus had a right to bid on his own account so long as any bidder or bidders other than the plaintiff should continue to make bids at the sale, and that there were other such purchasers, and that Kittlaus purchased the land on his own account and for his benefit; deny that Kittlaus agreed to loan or advance the plaintiff $500; admit that the second agreement of April 18, 1899, was made, but deny that it was a modification or change in the agreement of April 15th, and aver that it was without any consideration and was not binding upon Kittlaus; aver that at the sale the plaintiff made bids on joint account of himself and Kittlaus, and that Kittlaus made bids on his individual account, and that two and eighty-two one-hundredths acres were sold to a third party for $165, the plaintiff and Kittlaus both ceasing to bid therefor when it reached that price; that the 15.30 acres were next offered for sale, and the plaintiff made a joint bid therefor, in the proportionate amount of $500, to-wit, in the sum of $335, and that thereupon other bidders than Kittlaus increased the bid, made by the plaintiff, and the plaintiff not having means to pay any sum in addition to the sum to be paid by Kittlaus, ceased bidding, and thereupon Kittlaus continued to bid on his own account against such other bidders, and finally purchased the 15.30 acres for $450; deny that Kittlaus obtained the deed from the sheriff to himself with intent to cheat or defraud the plaintiff, or that he violated his duties to the plaintiff; admit that Wittich took the conveyance from Kittlaus with notice that plaintiff claimed an interest in the land; admit that Kittlaus received the $165 in the condemnation proceeding, but allege that Kittlaus expended a large sum of money, to-wit, $450, for the protection and in defense of the title to and possession of the land, and aver that plaintiff has not tendered to the defendants, or either of them, the amount alleged to have been loaned by Kittlaus to the plaintiff to buy in the land, nor has he tender-

ed or offered to pay to Kittlaus any portion of the amount expended in defending the title to the land.

The case made is this:

The plaintiff had a judgment against Ponath. Ponath owned an interest in a larger tract of land, of which the land in controversy was a part, and a partition suit was pending therefor. The plaintiff caused Ponath's undivided interest to be sold and became the purchaser thereof. He then, on his own motion, was made a party to the partition suit, and in that suit was awarded 17.382 acres. But his interest was charged by the decree in partition with the payment of $329.51, his proportion of the costs in the partition suit. The plaintiff was in financial distress and was unable to pay the costs. In addition Ponath had previously executed a mortgage on the whole land for $5,000, and a suit to test Ponath's right to thus mortgage partnership property was pending. Plaintiff's attorney advised him to permit the land to be sold under execution to satisfy the costs and to clear up the title; and further advised him either to buy it himself, or if he was unable to do so, to procure some friend to do it for him. The plaintiff and Kittlaus were members of a Turner society in St. Louis, the plaintiff being an officer and Kittlaus an instructor in the society. They had been friends for seven or eight years. Plaintiff applied to Kittlaus for assistance in the matter, with the result that they procured an attorney to draw up the agreement of April 15, 1898, hereinbefore set out. The plaintiff's attorney was not informed of this arrangement, but throughout the transaction rested under the impression, given him by the plaintiff, that Kittlaus was simply acting as his friend in the matter. The land was to be sold on the 18th of April, 1898, in St. Louis county. On that day the plaintiff and Kittlaus went to Clayton, and before the sale entered into the written agreement hereinbefore set out, on the 18th of April, 1898. There was no consideration paid by the plaintiff to Kittlaus for en-

tering into that agreement. They kept that agreement secret and did not disclose it to their attorneys.

The plaintiff's testimony tends to show that two and a fraction acres were first put up and that plaintiff made no bid therefor, and that Kittlaus and third persons bid thereon, and the land was finally sold to such third persons. Then the 15.30 acres were offered for sale. Plaintiff made no bid therefor at all. He says in his oral testimony that the reason he did not do so was that he and Kittlaus understood the agreements to be that Kittlaus was to do the bidding, and that the plaintiff was to abstain from bidding, and the petition so alleges. Plaintiff's testimony further shows that Kittlaus and other persons bid on the 15.30 acres, and that it was finally knocked down to Kittlaus for $450.

The testimony on behalf of the defendant tends to show that the plaintiff made bids for the 15.30 acres, and that when the bids had reached $380 to $385, Kittlaus told Gloeckner that the $500 had been exhausted— that is, $380 for the 15.30 acres and $160 for the two and a fraction acres, amounted to more than $500, and that thereupon plaintiff ceased bidding, and Kittlaus commenced to bid against the third parties, who were also bidding, and finally became the purchaser for $450. The defendant, Kittlaus, further says that when plaintiff did not bid on the two and a fraction acres, he asked him why he had not done so, and plaintiff replied that he understood it was $160 an acre, and thereupon Kittlaus asked him where his legal adviser was, and plaintiff replied that his legal adviser thought it was advisable for him to stay away from the sale. Plaintiff's adviser testified that he was present at the sale, standing between the plaintiff and Kittlaus. Kittlaus said plaintiff's adviser was present, but was not taking any part in the sale, was ninety feet away from the place of sale, and "was walking up and down with an umbrella under his arm on the pavement outside of the building."

The testimony of both parties shows that after the

land was knocked off to Kittlaus, the plaintiff and his attorney and Kittlaus went to the sheriff's office, and there Kittlaus paid the $450, and took the sheriff's receipt therefor, after it had been examined by plaintiff's attorney, who says he thought he was acting at that time for both parties, and that subsequently a deed was made by the sheriff to Kittlaus.

The sale took place on the 18th of April, 1898, and the deed was made to Kittlaus, and duly recorded, within about a week thereafter. Plaintiff knew, at that time, that a deed to the whole property was made to Kittlaus, and made no objection to the conveyance being so made. Plaintiff says he had no conversation with Kittlaus from that time until 1902, when Kittlaus told him that the litigation concerning the property, which was then pending in this court (and which Kittlaus had been conducting and paying all the expenses incident to it), was about won, and Kittlaus asked plaintiff if he would stand some of the expenses, and that plaintiff replied that if the old contracts were cancelled he would stand some of the expenses of the litigation, but that if the old contracts were not cancelled, then, the matter must stand in the way it then was. Plaintiff further says he told Kittlaus at that time that he had made a contract and ought to stand by it; that he had given him a good chance to make a whole lot of money out of it; that he only wanted to get ''my money again.'' That Kittlaus said, ''If I don't want to spend any money in case the suit is lost, then we leave it the way it is.'' Kittlaus's version of this branch of the case is, that in the fall of 1901, the plaintiff notified him he wanted to see him, and when they met, he explained to plaintiff how the litigation concerning the property stood and how hard he had fought the same, and that he understood plaintiff still asserted some claim to the property, and asked him if he was willing to stand a portion of the expense of the litigation in case the suit was lost, and that plaintiff refused so to do, stating that he had

no more agreements to make; that he wanted one-half of the property; and thereupon he (Kittlaus) said, "Now leave it go as it is, and take chances on the court's decision favorable or unfavorable;" that plaintiff said he would stand no part of the expenses, and would not pay a cent thereof, unless Kittlaus would give him half of the property, and this Kittlaus flatly refused to do.

The litigation was won by Kittlaus, and thereupon plaintiff asserted a claim to a five-sevenths interest in the property. Kittlaus refused to allow him any interest in it.

When cross-examined with reference to the $500 mentioned in the first agreement, and with respect to whether or not he, plaintiff, was to repay that amount to Kittlaus, and as to whether he had ever offered to pay that amount, or any other amount, the plaintiff said he did not exactly understand that branch of the case, but finally took the position that he was under no obligation to return the whole or any part thereof, or to pay any part of the expenses of the litigation concerning the property, taking the position that the two-fifths interest in the property to be allowed Kittlaus was to compensate him for the $500 advanced by him to bid in the whole property.

Upon this showing the chancellor dismissed the bill and entered judgment for the defendants, and, after proper steps, the plaintiff appealed.

## I.

The theory of the plaintiff seems to be that Kittlaus was to advance $500 to bid in the property, and to have a two-sevenths interest for so doing, and that the plaintiff was to have a five-sevenths interest free of all claims; and further that the arrangement between them was that Kittlaus was to do the bidding at the sale and that the title was to be conveyed in the proportions aforesaid, to the parties, and that relying upon that, the

plaintiff refrained from bidding at the sale, and hence that Kittlaus took the property charged with a trust.

There is no basis for such a theory under the issues in this case. The petition sets out the original contract of April 15th, and also the alleged written modification thereof on the 18th of April. Neither of those contracts required or contemplated that Kittlaus should be the bidder for the property on joint account. On the contrary, the first contract expressly provided that the plaintiff should do the bidding and should buy the property in on joint account, and that the plaintiff should furnish the excess over $500 which the defendant was to advance or loan in order to acquire the title. The modification of the contract does not specify who should do the bidding. There is, therefore, no foundation in the pleadings for the claim that Kittlaus was to be the bidder, and that the plaintiff was to refrain from bidding. It is true the petition states, after setting out the contracts, that the parties mutually understood that Kittlaus should do the bidding, and that the plaintiff should refrain from so doing, but there is no provision, even in the oral agreement, to that effect, and such a condition or deduction cannot be drawn from the language of the written contract itself, but on the contrary is directly contrary to the express terms of the contract.

The testimony for the plaintiff tends to show that he did not bid at all. If that is taken as true, then the plaintiff did not perform his part of the contract. It is uncontradicted that the plaintiff did not furnish the excess over $500, necessary to buy in the property on joint account. He says he had no money with which to do so, and that Kittlaus knew that fact. But the contract required him to do that, if the land sold for more than $500. The land did sell for more than $500. Under this view, therefore, the plaintiff failed to show that he had complied with his part of the contract, and, therefore, was not entitled in equity to compel the de-

fendant to perform his part. The original contract, however, is *sui generis,* in this, that while it required the plaintiff to become the purchaser of the property, and required the defendant to put up $500, and the plaintiff to put up the excess over that amount necessary to purchase it, it also provided that if any third person bid on the property, Kittlaus should be at liberty to also bid against such third person, and to buy the property for his own use and benefit. Third persons did bid on the property, and plaintiff's version is that he did not do so. Kittlaus, therefore, was at perfect liberty, under the terms of the contract, to bid on the property and to buy it on his individual account. He did so. The plaintiff stood by and saw him do so and made no objection. Kittlaus contends that in so doing he purchased the property as his own, and the subsequent proceedings and conduct of the parties for four years thereafter cannot be construed in any other light than that both the plaintiff and Kittlaus so regarded the transaction. For after bidding in the property Kittlaus went to the sheriff's office, the plaintiff and his attorney accompanying him, paid the amount of the bid to the sheriff, and within a week thereafter took the deed to himself and duly recorded it. All these matters were known to the plaintiff, yet he asserted no claim to the property. The plaintiff also knew that there was litigation concerning the title, and that Kittlaus was defending that litigation, and bearing the expenses thereof. During all that time the plaintiff asserted no claim. When Kittlaus asked him to share a part of the expenses of that litigation, he refused to do so, unless Kittlaus would cancel the prior contracts, and give him a half interest in the property. This Kittlaus refused to do. Such conduct on the part of the plaintiff is not calculated to impress a court of equity very favorably, nor to lead it to believe that he understood that Kittlaus purchased the property on joint account, but rather leads to the conclusion that all parties under-

stood that Kittlaus, in purchasing the property, was exercising the right given him by the contract, to do so if the third persons bid on it. This conclusion is reached without taking into consideration the testimony of Kittlaus, that the plaintiff bid on the 15.30 acres, until the proportionate part of the $500 was exhausted, and that he then warned him that if he continued to bid, he would have to furnish the excess money himself, and, thereupon, the plaintiff ceased to bid, and then, for the first time, Kittlaus bid against the third person.

The original arrangement, as embraced in the written contract or as disclosed by the oral testimony, is very difficult of understanding. The plaintiff, himself, did not seem to understand, when interrogated, whether or not he was to repay Kittlaus the $500 to be advanced by him, but he finally took the position that the conveyance to Kittlaus of the two-sevenths interest was to compensate him for the $500, and that the plaintiff was to return no part thereof, but that he was to have the five-sevenths interest in the property free of all claims. Two-sevenths of $500 would amount to $142.85. If plaintiff's position is correct, therefore, Kittlaus was to give $500 for the privilege of getting property of the value of $142.85. The whole property actually sold for $610. Two-sevenths of that sum would amount to $174.28. Under plaintiff's theory, therefore, Kittlaus was to pay $500 for a two-sevenths interest in the property, which was worth only $174.28. This conclusively demonstrates that the contract never contemplated anything of that character, but clearly contemplated that, for his services in advancing the $500, Kittlaus was to receive back the $500 advanced, and a two-sevenths interest in the property. If that is not the true construction of the contract, then the absurdity is presented of Kittlaus giving or agreeing to give $500 for land that was only worth $174.28, and of making the plaintiff a present of property worth $437.72. To place such a

construction on the contract would be to establish an unprecedented instance of disinterested friendship.

It will be observed, however, that the plaintiff sets out both the original contract of April 18th, and, what he denominates the modification thereof, of the 18th of April, and treats the latter as a mere modification of the former and not a substitution for it, and then the pleader avers that it was mutually understood and agreed, between the parties, under the modified agreement, that the plaintiff should refrain from bidding, and that Kittlaus should do all the bidding at the sale on joint account.

The agreement of April 18th is a most remarkable agreement, and is inconsistent with the agreement of April 15th. Under the original agreement Kittlaus was to furnish $500 and the plaintiff was to furnish any amount in excess thereof necessary to buy the property. Kittlaus was to have a two-sevenths interest and the plaintiff a five-sevenths interest. The plaintiff was to do the joint bidding, and if third persons bid, Kittlaus was to have a right to bid on his own account. The modified agreement provided that if Kittlaus paid more than $500 for the property, the plaintiff was to share in the property in the following proportions, that is, if the property sold for a sum between $501 and $700, the plaintiff was to have "$800 worth of same property;" and if it sold between $701 and $1,000, the plaintiff was to have "$600 worth of the property in land." Nothing was said in the modified agreement about the plaintiff doing the bidding, nor does that agreement seem to contemplate that the plaintiff was to furnish the excess over $500 as the original agreement provided. Yet under the modified agreement, if Kittlaus bought the land for a sum between $501 and $700, the plaintiff was to have $800 worth of the same property, etc. In other words, if the property sold for $501, Kittlaus was to pay the $501 and to give the plaintiff $800 worth of the same property that had sold for $501. Or, other-

wise stated, Kittlaus, by some process that is inconceivable, was immediately to make the property that had sold for $501 worth $800. Thus the plaintiff would get the property at the enhanced value over and above its salable value, and no provision was made for Kittlaus getting anything. Under this arrangement it would require Kittlaus to expend $800, that is, $501 he paid at the sale, and $299 to make the property worth $800, and the plaintiff would get it all, and Kittlaus nothing.

If this is not the true meaning of this remarkable agreement then the only other construction that can be put upon it is that the parties must have considered the land worth at least $1,500 to $1,700, and that it would not sell, in any event, for more than $1,000. The land actually sold for $610. Yet the uncontradicted evidence in the case is, that the portion of the land purchased by Kittlaus was the poorer portion, which was subject to overflow, and that it had no outlet. And further, that it sold for its full value, if not more.

But it is useless to pursue this feature of the case further, for the simple reason that there was clearly no consideration to Kittlaus to support the agreement of April 18th, nor is the petition predicated upon that agreement, for the plaintiff claims an undivided five-sevenths of the property, as provided for in the original agreement, and because the contingencies covered by the modified agreement never arose. The original agreement contemplated the purchase of the 17.382 acres for $500, which was at the rate of $28.76 an acre. The 15.30 acres at that price would amount to $440.02, which was about the price Kittlaus paid for it. The 15.30 acres brought just above the price the parties contemplated when they made their first agreement; and the second agreement, even if it was a valid contract, would not apply to the facts in this case.

The bill contains no offer to refund any part of the $500, and the plaintiff contends that he was not obliged to return it, because of his theory of the case,

aforesaid.  Such a theory is so highly improbable that no court would adopt it, if any other construction of the contract was possible.  Without an offer to refund, the bill stated no cause of action, and the demurrer which the defendant interposed should have been sustained.

The extreme novelty and uniqueness of the plaintiff's position is further illustrated by his refusal to contribute anything towards the expense incurred by Kittlaus in defending the title to the property.  The plaintiff says he offered to pay a part, not specified, of such expense, if Kittlaus would cancel all prior contracts, and give him a half interest in the property.  Such generosity on his part is incompatible with his prior and subsequent conduct in the case, for if he was entitled, as he here claims, to the five-sevenths interest in the 15.30 acres, and was not obliged even to refund the proportionate part of the purchase price that had been paid by Kittlaus, it is inconceivable why he should agree to pay any part of the expenses and take only a half interest in the property instead of retaining the five-sevenths interest, without paying anything.

Plaintiff cites and relies upon cases which hold that where property is sold in partition, and one of the tenants in common buys it in his own name, in consideration of the other tenant in common refraining from bidding at the sale, the one who buys it in holds it in trust for all.  Those cases have no application to the case at bar, for the manifest reason that in such cases the tenant in common who refrains from bidding, furnished a part of the consideration for the purchase of the land, to-wit, his proportionate share of the property.  Moreover, this is not a case of a tenant in common bidding at a partition sale.  It is simply a case of the land of the plaintiff being subjected to seizure and sale for the payment of his debts, and, under even the strongest view of the case taken by the plaintiff, of Kittlaus furnishing all the money, and, according to plaintiff's

theory, of getting for his pains only an aliquot portion of the money furnished by him in land, and of giving the bulk of the land to the defendant for nothing.

Plaintiff also cites and relies upon a line of cases which hold that where one furnishes the money and another buys the property, and takes it in his own name, a resulting trust arises in favor of the party who furnished the money. But it requires no great degree of perspicacity to see that such is not this case. The plaintiff furnished no money at all and according to his theory was not required to furnish any and was not able to furnish any.

If such a case as this could be held to create a resulting trust, it would afford a very advantageous method for a debtor to have his debts paid, and still retain or preserve five-sevenths of the property levied on for the payment of his debts. Almost any debtor would be glad to enter into such an arrangement. It would be the work of supererogation to attempt further amplification or demonstration in this case. The petition does not state a cause of action, and the plaintiff's testimony not only contradicts the written instrument, but, if true, presents a condition beyond the conception of the ordinary human mind, and one which the plaintiff failed to comply with on his part.

The judgment of the circuit court is right and it is affirmed.

All concur, except *Brace, P. J.*, absent.