IVEY et al. v. TEICHMAN. (No. 7432.)

(Court of Civil Appeals of Texas. Galveston. Nov. 17, 1917. Rehearing Denied Jan. 17, 1918.)

1. TRUSTS ⧯371(2)—ACTIONS — PLEADING — CREATION AND EXISTENCE OF TRUSTS.

An amended petition, alleging that an attorney, who had purchased property sold for taxes, had done so to retain it for his client, defendant, but which fails to allege defendant's ownership and right of possession, or any consideration for the agreement, does not show an enforceable trust.

2. ATTORNEY AND CLIENT ⧯123(1)—COMPENSATION—DEALINGS.

Although an attorney orally promised to permit his client to redeem property the attorney had purchased under tax sale, out of which the attorney's fees were to be paid, yet when the client, without offering to redeem, refused an offer from another for the full value of the property, the attorney's obligation terminated.

3. JUDGMENT ⧯203 — CONCLUSIONS — STATUTE.

A judgment awarding land to claimant under tax title, and the city judgment for taxes accruing since claimant's purchase, and reciting that it does not affect former tax adjudications against parties other than claimant, is a final judgment, not violating the law against rendering two judgments in a cause.

4. TAXATION ⧯620—SALE UNDER JUNIOR ASSESSMENT—BARRING PRIOR TAX LIENS.

The refusal of the trial court to foreclose any liens for taxes due prior to judgment for taxes under which the property was sold was correct, since a valid sale under a junior assessment cuts off all prior tax liens.

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by A. R. Teichman against J. F. Y. Ivey and others. From the judgment, defendants appeal. Affirmed.

John B. Warren, of Houston, for appellants Ivey. J. C. Hutcheson, Jr., and L. H. Dunn, both of Houston, for appellant city of Houston. W. G. Love and R. H. Holland, both of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against appellants, J. F. Y. Ivey and wife, Sallie Ivey, the city of Houston, and Norman G. Kittrell, Jr., to recover title and possession of a lot or parcel of land in the city of Houston, fully described in the petition, and to clear said title from clouds cast thereon by certain judgments for taxes in favor of the city of Houston.

The defendants Ivey and wife answered by general demurrer, plea of not guilty, and pleas of limitation of three, five, and ten years, and by trial amendment further pleaded that A. C. Van Velzer, under whom appellee claims title, acting as attorney—

"for said defendants, redeemed said defendants' interest in the property from the Houston Town Lot & Improvement Company, who claimed same under a tax title, and agreed with the defendants to hold same for their use and benefit; that at the time alleged in plaintiff's petition, filed in this cause, said A. C. Van Velzer conveyed these defendants' interest in said lands to a man named C. F. Winkler, who took the title to same, knowing that said A. C. Van Velzer did not own said interest in said land in fee simple or otherwise, but was simply holding the same as the attorney of these defendants, for their use and benefit, with the right on his part to get out of said interest the money he had paid out to redeem it, as above stated; that the said C. F. Winkler, at the time alleged in plaintiff's petition, transferred said land to the plaintiff in this case, A. R. Teichman, with the full knowledge in law and fact that he did not own said land, but was holding the same in trust for the use and benefit of these defendants, and with a charge against same for such sums of money as said A. C. Van Velzer had paid out on said land for these defendants' use and benefit; that the plaintiff in this cause, A. R. Teichman, took the said transfer of said land as above mentioned with the full knowledge of these defendants' said interest in said land, and with the full knowledge in law and equity that said C. F. Winkler did not own said land in fee simple, and that he did not have the legal right to sell same; to plaintiff or any one else, and with the knowledge that said Winkler was holding this land subject to the charge above set forth in favor of said A. C. Van Velzer for the use and benefit of these defendants; that said A. R. Teichman now holds the said land for the use and benefit of these defendants, subject to the charge in favor of A. C. Van Velzer, as above set forth, and not as his own property; that the transfer of said land by said A. C. Van Velzer to C. F. Winkler, and by C. F. Winkler

to plaintiff, A. R. Tiechman, was without their knowledge and consent, and in violation of their rights."

They further, in said amended answer, offer to do equity, and ask the court to charge their interest in the property with whatever amount may be found to be due by them and for which their interest in the property can be held liable.

The defendant Norman G. Kittrell, Jr., answered by general demurrer and plea of not guilty.

The city of Houston, in addition to a general demurrer and plea of not guilty, set up the tax judgments mentioned in plaintiff's petition, and asked recovery thereon and a foreclosure against plaintiff of the lien established by said judgments. Said answer further pleads a cause of action against plaintiff for the taxes due the city of Houston on said property for the years 1910, 1911, 1912, and 1913, and asked judgment for the amount of said taxes, with interest, penalties, and costs, and for foreclosure of tax lien therefor on said property.

The cause was tried with a jury, and after hearing the evidence the trial court instructed the jury to return a verdict for plaintiff for the land sued for and in favor of the city of Houston for the taxes due on the property for the years 1911 to 1913, inclusive, with interest and penalties, and for foreclosure of the tax lien therefor. Upon the return of a verdict in accordance with said instructions, judgment was rendered in accordance therewith.

Elizabeth Ivey is the common source of title under which plaintiff and defendants Ivey claim. Elizabeth Ivey died intestate in 1906, and there was no administration upon her estate. Her surviving heirs were J. F. Y. Ivey, R. Ivey, Theresa Brizzolari, Daisy Stacy, Will Ivey, Aurelia McGovern, and Anton Frank, Jr. On the ——— day of January, 1906, Aurelia McGovern, joined by her husband, for a recited consideration of $10 "and other good and valuable considerations," conveyed to defendant J. F. Y. Ivey all of her undivided interest in the property in controversy. On January 16, 1906, defendants J. F. Y. Ivey and wife conveyed to E. H. Vasmer and P. H. Briant, by deed of general warranty, an undivided one-third interest in the property in controversy. On February 12, 1906, Vasmer conveyed his one-sixth interest in the property to Briant, and on February 13, 1906, Briant conveyed the undivided one-third interest, which had been conveyed to him and Vasmer by defendant Ivey, to Norman G. Kittrell, Jr.

On January 6, 1912, in a suit brought by the city of Houston against Norman G. Kittrell and the heirs of Elizabeth Ivey before named to recover the taxes due said city on the property for the years 1906 to 1909, inclusive, judgment was rendered for the city for the said taxes, together with inter-est and penalties amounting to the sum of $249.57, and foreclosing the tax lien on the property. Under an order of sale issued upon this judgment the property was sold by the sheriff of Harris county on the 5th day of March, 1912. R. W. Franklin was the purchaser at this sale and the property was conveyed to him by the sheriff by deed of date March 5, 1912. In September, 1912, Franklin conveyed to the Texas Town Lot & Improvement Company. This company on January 14, 1914, by its president, H. Masterson, conveyed all of the property to A. C. Van Velzer for a consideration of $1,000, $800 cash and $200 payable in six months, and secured by a vendor's lien on the land. Van Velzer conveyed to C. F. Winkler on March 16, 1914, and on July 3, 1914, Winkler conveyed to plaintiff. The deed to Winkler recites a consideration of $1,000, and the deed from Winkler to plaintiff $1,025.

A. B. Frank conveyed his interest to Fred R. Switzer on February 14, 1914. Said Switzer also acquired the title of R. Ivey, Mrs. Brizzolari, Mrs. Stacy, and Will Ivey by deeds of general warranty of date March 12, March 16, March 18, and April 13, 1914, respectively. On January 26, 1915, Switzer conveyed to R. E. Lewis. By deed of date May 17, 1915, R. E. Lewis conveyed all of his "right, title, and interest" in the property to plaintiff.

After the death of his mother, Elizabeth Ivey, all of the other heirs before named brought suit against defendant J. F. Y. Ivey to recover a six-sevenths interest in the property. On the 8th day of December, 1913, a verdict and judgment were rendered in this suit in favor of plaintiffs, awarding to each of them an undivided one-seventh interest in the property. On December 10, 1913, a written agreement was entered into, by and between the parties to said suit, by the terms of which R. E. Lewis was appointed receiver for the purpose of selling the property; it being incapable of partition. This agreement provided that the property should not be sold until all claims for delinquent taxes thereon had been extinguished, but that the receiver might sell it at any time within 30 days after all claims for taxes were satisfied. It was further provided in said agreement that:

"The said J. F. Y. Ivey, in consideration of the obligation of the plaintiffs to him as hereinafter set forth, hereby agrees and binds himself to settle and dispose of all outstanding claims resulting from delinquent taxes against the property and premises hereinbefore described, and to that end, if in his judgment it should be necessary to institute, prosecute, or defend any and all suits or proceedings essential to the adjudication and satisfaction of said liens or claims, he, the said J. F. Y. Ivey, agrees to prosecute or defend all such suit or suits as may in his judgment be necessary or proper in, the premises, at his own expense, and to pay such sum or sums of money as may be necessary to pay off and satisfy all such claims and free said property from all rights, liens, or demand resulting from such delinquent taxes, or from any and

all sales of said property, or any part thereof, resulting from any alleged claims for delinquent taxes. It is further agreed that in case either of the plaintiffs, or their counsel, should acquire any claim for delinquent taxes against said property, or any title or lien based upon such delinquent taxes, the same shall inure to the benefit of all parties to this contract, and shall not operate to interfere with or defeat the rights of the parties as herein set forth.

"In consideration of the agreement and undertaking upon the part of the defendant J. F. Y. Ivey, as hereinbefore set forth, the plaintiffs hereby agree and contract with the defendant J. F. Y. Ivey that when the property and premises hereinbefore described has been sold by the receiver as hereinbefore provided, that instead of the plaintiffs receiving six-sevenths of such purchase price, the plaintiffs R. Ivey, Daisy Stacy, Anton Frank, Jr., Theresa Brizzolari, and Will Ivey shall jointly receive of the proceeds of said sale the sum of nineteen hundred ($1,900.00) dollars, and the remainder thereof shall be paid to and become the property of the defendant J. F. Y. Ivey (it being understood that the said J. F. Y. Ivey has already acquired the interest of the plaintiff Amelia McGovern). It is further agreed that no sale of said property shall be made by said receiver for less than a sufficient sum to pay the plaintiffs entitled to said sum of $1,900.00 at least that amount, and to pay all the unpaid costs taxed against the plaintiffs and delinquent taxes; it being understood that none of the plaintiffs who are to receive said $1,900.00 as hereinbefore set forth shall be responsible or liable for the payment of any costs, taxes, or other expenses which have been incurred or which may become due in the premises, and said sum of $1,900.00 is to be net to them; that said J. F. Y. Ivey hereby agrees and binds himself, as hereinbefore stated, to pay off and discharge all delinquent taxes against said property, and to adjudicate all claims of title to said property, by suit or otherwise, growing out of any sale of said property by virtue of any delinquent taxes, and it is hereby agreed by and between the parties hereto that said matters shall be settled and adjudicated with reasonable diligence, and that the said J. F. Y. Ivey will settle, pay off, and determine said matters with dispatch, and that if he fails to do so with reasonable diligence that the terms and conditions of the agreement shall be void."

A. C. Van Velzer was one of the attorneys for J. F. Y. Ivey in said suit. On July 16, 1914, in a suit brought by the state of Texas against the heirs of Elizabeth Ivey, before named, and Norman G. Kittrell, Jr., to recover taxes due the state on said property, in which suit the city of Houston intervened, judgment in favor of the city of Houston was rendered against all of the defendants for the sum of $1,542.83 taxes due said city upon the property in controversy in this suit for the years 1877 to 1880, inclusive, 1882 to 1888 inclusive, 1890 to 1898, inclusive, 1901 to 1903, inclusive, 1910 to 1913, inclusive, and for foreclosure of the tax lien on the property. The testimony of the defendant J. F. Y. Ivey and Judge Harris Masterson, which appellant contends is sufficient to show that Van Velzer held the title to the land acquired by his deed from the Texas Town Lot & Improvement Company in trust for defendant Ivey, was as follows:

J. F. Y. Ivey testified:

"I have known A. C. Van Velzer a good number of years. He represented me in matters in the district court in connection with property on which I at one time lived in Travis and Webster, described in this suit. He represented me in connection with tax suits, in connection with that property. I saw in the court proceedings in the papers that judgment had been gotten out against me for $340. I forgot what court it was, and I came down to his office and says: 'What sort of business do they do around the courts? Look at this; there has been no citation ever left at my house.' He said: 'Just wait until the day of sale, and make a protest and statement of the case, and then I will attend to getting out the proper papers.' And I came that day and made a statement, in which I protested, and then Mr. Van Velzer got out a petition and filed it in the court, and I signed the petition of course, and he put it on file, so he claimed. * * * One day I was there in Mr. Van Velzer's office, and he stated to me: 'How would it do to go around and see Judge Masterson, and I will buy that property in and hold it in trust for you until we can dispose of the property, and then you can pay me what I pay in, as well as my attorney's fees.' And I said: 'All right; how much is it?' And he said: 'It amounts to about $1,000.' And I went up to Judge Masterson's office with him, and he gave him a check for $800 and a note for $200. He made that purchase to keep it in trust for me. That is what he stated, and he stated that in Judge Masterson's office, and said: 'Now we have had it all bunched together, every one could get what was coming to them in regard to it;' and so of course I had no idea as to his other proceedings. After he made that purchase he did not tell me that he was going to sell it. He said he was going to hold it in trust. When he left the office he said: 'I trust you feel satisfied now; I have got the whip hand, and I will hold this until we get the whole property.' * * * I first learned that he had transferred it by seeing it in the papers, and when I saw that he had transferred to Winkler I went down to the office and my wife went with me, and I said: 'What sort of business are you doing now; it looks like you are not doing right.' He said: 'There is a lot of technicalities in regard to it, and it is better for me transfer it over to Mr. Winkler to keep it in trust.' And I said: 'Have you got that in writing?' And he said: 'No.' He told me that Winkler had taken it to hold in trust just as he had done. After that, several months, I saw another deal in the papers where the property had been transferred from Winkler to Teichman, and I went down to the office to see him about it, and he claimed he did not know anything about that transaction at all. Then we had a few words and he said: 'Well, you had better get some lawyer.' And I said: 'I think it is time I got a lawyer that has some honesty; you haven't got any in you.' And so from that we parted. That was after Mr. Teichman bought the property. I am not living on the property now; they sequestered me the 28th of last June. It was not a voluntary removal. They filed an action, and I could make no bond. They were claiming rents. * * * My brothers and sisters sued me to recover their interest in this property after my mother's death. I employed Mr. Love in that suit. When the case went to the Court of Civil Appeals, I employed Watkins & Jones to assist him. When the case came up in the district court, then I got Mr. Van Velzer to assist. He did not have Mr. Lewis with him then, as he had afterwards. Mr. Van Velzer took charge of the case after I got him into it. The case went to the Court of Civil Appeals the second time after I got Mr. Van Velzer. It went to Galveston, and was transferred to San Antonio, and they reversed it. Then it came back here and there was an agreed judgment in Judge Ashe's court in which they were to get $1,900 for their share. After that Mr. Love had nothing to do with the matter that I know of. In that judgment over

there shows that I got two-sevenths interest, and each one of my brothers and sisters got judgment for one-seventh. I was to use due diligence in disposing of the property and give them their pro rata. That agreement was in writing and we all signed it. We owed taxes for a number of years; at least the city, county, and state were claiming taxes. Mr. Lewis found a purchaser that he was willing to sell to, and recommended that I sell for the price offered; but I was unwilling to do it, for the simple reason that I was only offered $2,000 for my share. It was the understanding between me and Mr. Van Velzer, when he put up the money and bought this tax title from Masterson, that when the property was sold that there was to be paid out of the proceeds of this sale $500 to Mr. Love and $625 to Van Velzer and Lewis, and the money to pay Van Velzer back the money that he had put in it, and whatever was required, if anything, to pay any additional claims against the property, taxes, state and county, and any claims of any kind. The supposition was within the next two years we would be able to dispose of the property, and he was to help in every way in the world to sell it. It was his own proposition about buying that in. I never suggested it. Long before this suit of my brothers and sisters against me, I had employed Judge Vasmer and Mr. Briant to represent me in that case, and conveyed to them a one-third interest in the property as a fee. I know that Vasmer and Briant sold whatever interest they got under that deed to Norman Kittrell for $400, and I know that title finally went into Franklin with the tax title, and the whole thing was conveyed—whatever claim they had went into Franklin and from Franklin to the Texas Town Lot & Improvement Company. * * * I would like to make a statement about that Vasmer business: My contention is that, when I made this trade with Vasmer and Briant to represent me in that case, I gave them the deed; and I did that at the time when I did not know that I could find a deed that my mother had made to the property. Afterwards I found that old deed that had never been recorded, and repudiated that agreement with Vasmer and Briant, and discharged them from the case, because they had agreed to take $500 for their services if I found that old deed, and I employed Mr. Love afterwards. * * * I employed Mr. Van Velzer, and he took charge of the case from that time on, representing me in whatever controversies I had with the city, county, and state over taxes."

Judge Harris Masterson testified:

"I am president of the Texas Town Lot & Improvement Company. I know about this deed of the Texas Town Lot & Improvement Company to A. C. Van Velzer, dated January 14, 1914. At the consummation of the purchase or conveyance from the Texas Town Lot & Improvement Company to Van Velzer, Mr. Ivey and Mr. Van Velzer were present, as I recollect it; came together to make and obtain deed. My recollection is that I had a conference prior to that time with Ivey and Van Velzer. I had no independent recollection that there was anything said between me and Mr. Van Velzer, or Mr. Ivey, with reference to their right to redeem that through me, though I think that was the ground of Mr. Van Velzer's purchase. I was somewhat familiar with the property; the consideration named in the deed, $800 cash and $200 in a note, was to cover the taxes. That did not represent the value of the property. The property was worth, I suppose, $7,500. The consideration named in the deed was on the theory of the redemption to recover taxes. That is my idea of it. That was my understanding with them—the company claimed under the Franklin deed, and the Franklin deed had its origin as a tax title, so it was the tax title only that I was selling for this consideration. I understood that Van Velzer represented

Mr. Ivey in that matter. It was not my understanding that there was any statement made by Mr. Ivey or Mr. Van Velzer in my presence to the effect that Van Velzer was to become the owner in his own right in this property. I know they came there to get the tax title from me to this property. Prior to that time Mr. Ivey or Mr. Van Velzer had been there to see me; both of them I think. * * * It was my understanding from Van Velzer that he wasn't representing anybody, or connected with anybody in the matter, except John Ivey."

Under the appropriate assignments of error appellants Ivey complain of the charge of the court instructing a verdict in favor of plaintiff, on the ground that the evidence was sufficient to show title in defendant Ivey to the property in controversy. Under these assignments the following propositions are submitted:

"Van Velzer and Lewis stood in a fiduciary relation with the appellants Ivey and wife at the time conveyances were made to said attorneys, respectively. Such fiduciary relation arising by reason of the fact that they were attorneys for Ivey and wife, such attorneys could not acquire an interest in the property of their clients antagonistic to such trust relation, and, if such was done, the said attorneys held the said property in trust for their clients."

"The judgment is contrary to the law, and is without evidence to support it, in this: The uncontradicted evidence showed that defendant J. F. Y. Ivey had the legal and equitable title to an undivided two-sevenths interest in the property in controversy, and the equitable title to the five-sevenths and was in actual possession of all of it, claiming the same as the homestead, and plaintiff had actual and constructive notice of the rights of said defendants at and prior to the time of his purported purchase, and there was no proof that plaintiff or any of his vendors, paid value, in good faith, and without notice."

[1, 2] We agree with the trial judge that neither the defendants' pleading nor the evidence above set out shows any enforceable trust in favor of Ivey against Van Velzer. All that is alleged in the amended petition above set out is that Van Velzer agreed, when he bought the property, that he would hold it for the use and benefit of defendant Ivey, and that Winkler and plaintiff, Teichman, bought with knowledge of this agreement. The amendment does not allege that defendant was the owner of the property, or entitled to possession, but only sets up an agreement on the part of Van Velzer to hold the title for defendants' use and benefit. No consideration for the agreement is alleged, nor are its terms shown. That this petition shows no right in Ivey to recover the property against the holder of the legal title is, we think, clear. Ins. Co. v. Davis, 45 S. W. 604; Jones v. Jones, 49 Tex. 689; Gloeckner v. Kittlaus, 192 Mo. 477, 91 S. W. 130.

The requisites of a petition sufficient to entitle a complainant to enforce specific performance of an agreement of this kind are thus stated in 36 Cyc. 773 et seq.:

"The bill, complaint, or petition, in an action for specific performance, must state clearly and fully all the facts necessary to entitle plaintiff to the relief sought. * * * It must state facts which show that plaintiff has not a plain,

complete, and adequate remedy at law. * * * The complaint must properly allege the execution or making of the contract, and the essential terms of the contract must be alleged with distinctness and certainty, and not left to inference. * * * The defendant's failure or refusal to perform must clearly appear from the bill or complaint. * * * The bill or complaint must show that plaintiff has performed, or offered to perform, all the stipulations of the contract on his part, or must show a sufficient excuse for failure to do so, and aver his readiness and willingness to perform."

The evidence does not show that Ivey ever made any offer to repay Van Velzer or plaintiff any portion of the money paid by them for the property, nor that he made any effort to comply with his contract with his brothers and sisters to clear the property from tax liens, or to assist Lewis in finding a purchaser; but it is shown that Lewis found a purchaser, and Ivey refused to sell because he would only receive $2,000 for his interest. The only evidence as to the value of the property is the statement of Masterson that it was worth $7,500. This being its value, the price which Ivey declined to accept must have been as much as the property was worth to have given him $2,000 for his interest, after paying the sum due the other heirs, and the other charges, and attorney's fees, which Ivey admitted were to be paid out of the proceeds of the sale. When Ivey refused to accept this price, the obligations of Van Velzer terminated.

[3] The first assignment presented in the brief for the city of Houston is as follows:

"The judgment of the court below is void, in that it was rendered in violation of the provisions of the statutes; that only one final judgment can be rendered in any cause, and said judgment did not in any manner dispose of the defendants to the cross-bill of the city of Houston, except the sole defendant, A. R. Teichman, or any of the issues raised by the city on its cross-bill as against any of said defendants."

There is no merit in this assignment. The judgment expressly recites:

"The claim of the city of Houston for taxes under judgment for taxes upon said land and premises, as in other suits adjudicated against the parties in such other suits, other than Teichman, is not in any wise affected by this decree."

The recital was a sufficient disposition of the claim of the city of Houston on its tax judgments against defendants Ivey and others, and the judgment must be held to be a final judgment.

[4] The judgment of the trial court, refusing to foreclose any tax liens upon the property for taxes due prior to judgment for taxes under which the property was sold and purchased by plaintiff's vendor, was correct. It is well settled that a valid sale under a junior assessment cuts off all prior tax liens. City of Houston v. Bartlett, 29 Tex. Civ. App. 27, 68 S. W. 730; Law v. People, 116 Ill. 244, 4 N. E. 845; Wass v. Smith, 34 Minn. 304, 25 N. W. 605; Knox v. Leidgen, 23 Wis. 293; Preston v. Van Gorder, 31 Iowa, 251.

None of the assignments of error presented by the appellants can be sustained. It follows that the judgment of the court below should be affirmed; and it has been so ordered.

Affirmed.